IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**RALPH DONALD BRYANT, II**,

      **Plaintiff,**

v.                                                                                              Case No. 3:23-cv-00640

**DALLAS O'DELL WILLIAMS,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff filed this *pro se* civil action on September 26, 2023, seeking compensatory and declaratory relief from Defendant relating to Plaintiff's stay at a sober living facility located in Huntington, West Virginia. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **FINDS** that, to the extent Plaintiff raises any plausible claims, this Court lacks subject matter jurisdiction over them and **RECOMMENDS** that the complaint, (ECF No. 3), be **DISMSSED**, without prejudice, and Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), be **DENIED**, as moot.

**I.   Relevant Facts**

Plaintiff Ralph Donald Bryant, II ("Bryant") claims that, in December 2022, he was incarcerated because Defendant Dallas O'Dell Williams ("Williams"), a program director

1

at the Phoenix Rising Transitional Home, failed to contact Bryant's home confinement officer to report that Bryant had been given a "home pass." (ECF No. 3 at 4). The home confinement officer considered this failure to be a violation of Bryant's conditions of release, resulting in his reincarceration. Once Bryant was incarcerated, Williams disclosed Bryant's private medical and legal information to his girlfriend without consent, causing Bryant extreme mental distress and interfering with the personal relationship between him and his girlfriend. (*Id.* at 4-5).

According to Bryant, Williams is the incorporator, president, and an employee of Phoenix Rising Transitional Home ("Phoenix"), a drug treatment and sober living facility located in Huntington. (*Id.* at 10). In his position with Phoenix, Williams was responsible for accepting inmates from regional jails for housing, as well as overseeing staff, working with probation and home confinement officers, and acting as a peer support specialist. (*Id.*).

In December 2022, Bryant was released on bond to Kanawha County Home Confinement from the South Central Regional Jail where he had been incarcerated on a "minor drug charge." (*Id.* at 11-12). Bryant was equipped with a GPS monitoring device and told to call his home confinement officer on Tuesdays. According to Bryant's girlfriend, Ms. Serena Jones, Bryant had been given the opportunity for release to a sober living facility; accordingly, she began looking for a program to accept him and found Phoenix. (ECF No. 5 at 1). Ms. Jones picked Bryant up from Kanawha County Home Confinement and drove him to Phoenix, which had been approved by the court for Bryant's residential treatment. (ECF No. 3 at 12). While in treatment, Bryant was required by the court to remain on GPS monitoring, find a job, attend counseling, and submit to drug testing. (ECF No. 5 at 1). Ms. Jones and Bryant assert that he did well in the program,

passing every drug screen administered to him. (ECF No. 3 at 12; ECF No. 5 at 1).

On December 21, 2022, Williams dropped off home pass applications for the Phoenix residents to complete. (ECF No. 3 at 12). Bryant was subsequently approved by the Phoenix staff to a "day pass," which allowed him to go home to Summersville, West Virginia from Christmas Eve until 11:00 p.m. Christmas Day. (ECF No. 3 at 12). Bryant went to Summersville and spent the holiday with Ms. Jones. (ECF No. 5 at 1). Bryant was tested for drugs before and after using the day pass and tested negative on both occasions. (ECF No. 3 at 12; ECF No. 5 at 1).

Two days after using the pass, Bryant was informed by Williams that Kanawha County Home Confinement was upset, because Bryant's home confinement officer was not contacted about the day pass and Bryant had not received permission from the officer to leave Phoenix. (ECF No. 3 at 12-13). Bryant notes that he assumed Williams had obtained permission from the home confinement officer before giving Bryant the pass. Williams accepted responsibility for the oversight and agreed to take care of the problem; however, minutes later, Bryant was arrested and taken to the local regional jail. (*Id.*). Eight days after his arrest, he was transferred to the South Central Regional Jail.

Bryant alleges that Williams seemed concerned at first and eager to help, admitting that the mistake was "all his fault." (ECF No. 3 at 13). But as time passed, Williams used Bryant's absence as an opportunity to make advancements toward Ms. Jones. Williams shared Bryant's medical and psychiatric information with Ms. Jones, including that Bryant had been unfaithful to her, which nearly devastated their relationship. (*Id.*). As a result of Williams's actions, Bryant claims to suffer from severe bouts of depression, anxiety, lack of trust, mental distress, and PTSD, as well as physical harm related to his arrest and incarceration. (*Id.* at 14). He asserts causes of action for deliberate indifference,

3

negligence, dereliction of duty, violations of the Eighth Amendment of the United States Constitution and of the Health Insurance Portability and Accountability Act ("HIPAA"). (ECF No. 3 at 14).

## II. Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court must screen each case in which an individual seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 31-32 (1992); *Anders v. California*, 386 U.S. 738, 744 (1967). A case lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

The court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir.

1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). "Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 390 (4th Cir. 2004) (citing *United States v. Cotton,* 535 U.S. 625, 630 (2002)). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction. *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999).

There is no presumption that a federal district court has subject matter jurisdiction over a dispute. *Pinkley, Inc. v. City of Frederick, MD.,* 191 F.3d 394, 399 (4th Cir. 1999). Instead, the existence of jurisdiction depends upon the allegations contained in the complaint. *Id.* (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936)) (holding "the party who seeks the exercise of jurisdiction in his favor ... must allege in his pleadings the facts essential to show jurisdiction"). The mere assertion of a federal claim is insufficient to establish subject matter jurisdiction. *Davis,* 856 F.2d at 650.

Subject matter jurisdiction in the United States District Courts exists in one of two circumstances: (1) when a "federal question" is presented, or (2) when there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. If jurisdiction is premised upon on a federal question, the plaintiff must "assert a *substantial* federal claim." *Lovern,* 190 F.3d at 654 (quoting *Davis,* 856

5

U.S. at 650). The "doctrine of substantiality is especially important where a wholly frivolous federal claim serves as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Id.* at 655 (citing *Davis,* 856 U.S. at 651).

As part of its initial screening, the court should determine whether it has subject matter jurisdiction over the claims asserted by the plaintiff. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure."). The court should *sua sponte* dismiss a case when subject matter jurisdiction is lacking. *Davis v. Pak,* 856 F.2d 648, 650 (4th Cir. 1988) ("It is always incumbent upon a federal court to evaluate its jurisdiction *sua sponte,* to ensure that it does not decide controversies beyond its authority.").

Here, Bryant asserts that jurisdiction rests with this Court pursuant to 42 U.S.C. § 1983 and under HIPAA; thus, Bryant relies upon federal question jurisdiction. Title 42 U.S.C. § 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of State law. 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979)). In order to allege a *prima facie* claim under § 1983, a plaintiff must present facts showing that: (1) an individual defendant deprived the plaintiff of a federally protected civil right, privilege or immunity, and (2) that the defendant did so under color of state law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983.

Bryant states that Williams "works in concert with probation officers, home confinement officers under the color of law & the courts to aid in the monitoring and progress of its residents." (ECF No. 3 at 10). Bryant contends that Williams "acted with deliberate indifference" and was negligent. He claims that Williams's dereliction of duty caused Bryant to be reincarcerated in violation of the Eighth Amendment and that Williams violated HIPAA's confidentiality standards. (ECF No. 3 at 14).

Looking first at Bryant's Eighth Amendment claim, even assuming that Williams had a duty to report the day pass to Bryant's home confinement officer—which is questionable—Williams's failure to do so does not give rise to a claim under § 1983, because Bryant does not plead facts sufficient to demonstrate that Williams was a state official acting under color of state law when he neglected to report the day pass. Accepting criminal defendants as residents of his sober living home, alone, does not transform Williams into a state actor. *See Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 147 (2d. Cir. 2020). Bryant fails to include any factual allegations in the complaint which demonstrate that Williams's conduct can be "fairly attributable to the State" of West Virginia. *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). There are no allegations that the State controlled or managed Phoenix, and no claims that the actions of Williams and Phoenix were entwined with government policies. To the contrary, the allegations in the complaint indicate the opposite.

Bryant states that Williams is the president and incorporator of Phoenix, a privately-owned and operated substance abuse residential treatment program and sober living home. (ECF No. 3 at 10). The West Virginia Secretary of State's business organization database shows that Phoenix Rising Transitional Homes, Inc. is a "for-profit" C corporation specializing in health care and social assistance, operating nursing

7

and residential care facilities specifically for the treatment of intellectual and developmental disability, mental health conditions, and substance abuse. *See* https://apps.sos.wv.gov.busiess/corporations. Phoenix is not a state agency or a department of the State of West Virginia.

     Moreover, Bryant's girlfriend advises that she searched for a facility to accept Bryant when he was given approval for release to a treatment program, and **she** was the one who found Phoenix. (ECF No. 5). Nothing in her statement or the complaint suggests that Phoenix was selected by the State of West Virginia, or was represented to be part of West Virginia's correctional system. Bryant was released by Kanawha County Home Confinement into Ms. Jones's custody, and she delivered him to Phoenix. (ECF No. 3 at 11-12; ECF No. 5 at 1). He then purchased the items he needed to live at Phoenix and began the treatment program. Although Phoenix was approved for Bryant's residential care and treatment, he was still expected to report directly to his home confinement officer, wear GPS monitoring placed by the officer, and meet other conditions of release set by the home confinement officer. (*Id.*). Clearly, the State of West Virginia had not ceded control of Bryant to Phoenix, nor did the State run the program at Phoenix or direct its actions and decisions. *See Skipper v. Jumpstart,* No. 4:20-cv-04146-TLW, 2022 WL 4546068, at *1 (D.S.C. Sept. 29, 2022). Bryant states that he got in trouble with his home confinement officer because no one reported his day pass, and Williams was unable to get the misunderstanding resolved. (ECF No. 3 at 12-13). These allegations reflect that Williams was not a state actor; indeed, he was nothing more than the operator of a private residential treatment facility at which Bryant was permitted to live while on home confinement. Consequently, the undersigned **FINDS** that, as Bryant fails to state a cognizable claim under 42 U.S.C. § 1983, federal question jurisdiction cannot rest upon

that statute.

In the alternative, Bryant asserts subject matter jurisdiction pursuant to HIPAA. Although not specifically mentioned by Bryant, in addition to HIPAA, federal law protects the confidentiality of records prepared and maintained in connection with a program relating to substance abuse treatment which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States. 42 U.S.C. § 290dd-2. However, neither HIPAA, nor § 290dd-2, creates a private cause of action for violations arising from its provisions. *Doe v. Broderick*, 225 F.3d 440, 449 (4th Cir. 2000) (We hold that section 290dd–2 does not create "enforceable rights, privileges, or immunities within the meaning of § 1983.") (citation omitted); *Ellison v. Cocke County, Tenn.*, 63 F.3d 467, 471 (6th Cir.1995) ("[W]e conclude that Section 290dd–2 creates no implied private right of action for damages."); *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) ("Every circuit court to consider whether HIPAA created a private *right* to sue has found that it does not. This is because HIPAA does not expressly allow for a private cause of action but delegates enforcement authority to the Secretary of the Department of Health and Human Services, reflecting Congress's intent to forgo creating a private remedy."). As these statutes do not authorize Bryant's claims for breach of confidentiality, the undersigned **FINDS** neither HIPAA nor § 290dd-2 provides a basis for this Court to exercise its subject matter jurisdiction.

Given that Bryant's complaint does not raise a federal question, the Court's jurisdiction over the complaint is only proper "if the amount in controversy exceeds $75,000 and there is complete diversity of citizenship, pursuant to 28 U.S.C. § 1332." *Shelton v. Crookshank*, No. 3:17-CV-108, 2018 WL 527423, at *2 (N.D.W. Va. Jan. 24, 2018), *aff'd as modified,* 742 Fed. Appx. 782 (4th Cir. 2018). Complete diversity of

9

citizenship means that there is no plaintiff and no defendant in the case who are citizens of the same State. At the time the complaint was filed, Bryant was incarcerated at Pruntytown Correctional Center and, therefore, resided in Grafton, West Virginia. (ECF No. 3 at 3). He was recently released from custody and now lists a home address in Summersville, West Virginia. (ECF No. 10). According to Bryant, Williams has several addresses on file, all of which are located in Huntington, West Virginia. (ECF No. 3 at 10). Accordingly, the undersigned **FINDS** that both parties appear to be residents of the same state; thus, there is no diversity of citizenship. Although residency does not necessarily prove citizenship, *Jackson v. Johnson*, No. CIV.A. ELH-14-00011, 2014 WL 689390, at *2 (D. Md. Feb. 20, 2014), the burden to establish jurisdiction in this Court rests with Bryant, and he offers no other information to support the existence of complete diversity of citizenship.

As such, the undersigned **FINDS** that, in the absence of a federal question or complete diversity of citizenship, this Court lacks subject matter jurisdiction over the complaint, and it should be dismissed. Because Bryant may have negligence claims, or claims for breach of confidentiality, that could be brought in an appropriate West Virginia state court, the undersigned further **FINDS** that the dismissal should be without prejudice.

## IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that Plaintiff's Complaint, (ECF No. 3), be **DISMISSED**, without prejudice, for lack of subject matter jurisdiction; his Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), be **DENIED**, as moot; and this action be **REMOVED** from the docket of

the court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Federal Rules of Civil Procedure 6(d) and 72(b), Plaintiff shall have fourteen days (for filing of objections) plus an additional three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** November 14, 2023

_____
Cheryl A. Eifert
United States Magistrate Judge